1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**

9                  **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   ROY LEE BROWN, JR.,                    CASE NO. 98cv1128-J (WMc)

12                          Petitioner,     **ORDER:**

13        v.                                **(1) ADOPTING R&R; and**

14                                          **(2) DENYING PETITIONER'S
                                            SECTION 2254 HABEAS CORPUS**
15   TOM L. CAREY, warden,                  **PETITION**

16                          Defendant.

17

18        Before the Court is Petitioner Roy Lee Brown, Jr.'s ("Petitioner") Petition for Writ of

19   Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2254. [Doc. No. 1.] Magistrate Judge

20   William McCurine, Jr. has filed a Report and Recommendation ("R&R"), recommending that

     this Court deny Petitioner's Petition. [Doc. No. 75.] Petitioner has timely filed Objections to
21
     the R&R. [Doc. No. 79.] Respondent Warden Tom Carey ("Respondent") has not filed a
22
     Reply. For the reasons set forth below, this Court **ADOPTS** the R&R and **DENIES** the
23
     Petition in its entirety.
24

25
                                        *Background*
26
     **I. Underlying Facts**
27
          Petitioner is a California state prisoner serving a prison term of seventeen years to life
28
     with the possibility of parole. (*See* Resp't's Lodgm't No. 1 at 1-2.) His conviction arises from

the following facts that were presented at trial.

On April 1, 1992, at around 5 or 6 p.m., Sammy Blackmon was cashing his check at the Sundance Market in San Diego. (*See* Resp't's Lodgm't No. 11 at 1.) Paula Moore also was at the Sundance Market cashing a check. (*See id.* ) Mr. Blackmon told Ms. Moore that she had pretty brown eyes. (*See id.* at 2.) As Mr. Blackmon and Ms. Moore were speaking, Petitioner entered the store. (*See id.* at 3.) Petitioner approached Mr. Blackmon and said that he was disrespecting his woman, Ms. Moore. (*See id.*) Ms. Moore is the mother of two of Petitioner's children. (*See* Resp't's Lodgm't No. 12 at 210.)

According to Mr. Blackmon, he apologized to Petitioner, but Petitioner did not accept his apology, and the situation escalated to the point where both men were cursing at each other. (*See* Resp't's Lodgm't No. 11 at 4.) Petitioner left the store, and grabbed a tire iron. (*See id.* at 6.) Mr. Blackmon grabbed a dustpan that had a stick attached to it; and the store manager grabbed his gun. (*See id.*) When Petitioner tried to reenter the store, the store manager, Steven Acho, blocked the doorway. (*See id.* at 7-8.) A few other men gathered outside the store and tried to dissuade Petitioner from coming back into the store. (*See id.* at 8.) Petitioner returned to his car and drove away. (*See id.* at 11.)

Mr. Blackmon then went to his home, which was two blocks from Sundance Market, and gave his wife some money. (*See id.* at 13.) Then he got back in his car and went to the gas station to get gas. (See *id.*) Mr. Blackmon estimated he arrived at the gas station around ten minutes from the time he left Sundance Market. (*See id.* at 14.) At the gas station, Mr. Blackmon leaned down to reach into his ashtray to get money, and as he was rising back up, he looked to his left and saw Petitioner's car. (*See id.* at 14-15.) According to Mr. Blackmon, before he could turn his head, he saw Petitioner pull a gun out and shoot into his car through the driver's side window. (*See id.* at 15-16.) Mr. Blackmon testified that Petitioner was driving the same car he drove to Sundance Market. (*See id.* at 16.) Mr. Blackmon heard Petitioner fire five shots into his car. (*See id.* at 18.) One of the shots hit Mr. Blackmon in the right cheek. (*See id.*)

After the shooting stopped, Mr. Blackmon looked up and saw Petitioner pull out of the

gas station parking lot.  (*See id.* at 23.)  Mr. Blackmon was angry that Petitioner had left the gas station in "a very nonchalant manner." (Resp't's Lodgm't No. 11 at 23.)  Not realizing the extent of his injuries, Mr. Blackmon followed Petitioner.  (*See id.* at 24-25.)  After following Petitioner for a while, Mr. Blackmon realized that Petitioner had four other people in the car with him, and his jaw began to hurt so he returned home.  (*See id.* at 25-26.)

Mr. Blackmon's wife took him to the hospital for treatment.  (*See id.* at 26.)  At the hospital, San Diego Police Officer Fernando Mercado interviewed Mr. Blackmon about the incident.  (See *id.* at 29-30.)  Mr. Blackmon told Officer Mercado that he had an altercation with Petitioner earlier that day and that Petitioner had shot him.  (*See id.* at 30.)  Mr. Blackmon described the shooter as a light-skinned African American male, around 32 years old, 5'5" tall, weighing 130 pounds.   (See *id.* at 32.)  Mr. Blackmon also told Officer Mercado that the shooter had a two-inch natural hairstyle.  (*See id.*)

On April 9, 1992, San Diego Police Officer Elizabeth Addington conducted a telephone interview with Petitioner about the incident.  (See *id.* at 142-43.)  Petitioner told Officer Addington that he was involved in an altercation with another male at Sundance Market, but that afterwards he drove straight to Ms. Moore's house and stayed there all night because he was scared of Mr. Blackmon and had been hiding out since that day. (See *id.* at 145.)  When Officer Addington asked Petitioner to identify the vehicle he was driving the day of the incident, Petitioner said he was driving his "homeboy's" car; however, he would not describe the car or tell the Officer his friend's name.  (Resp't's Lodgm't No. 11 at 145.)  On April 16, 1992, Mr. Blackmon identified Petitioner as the shooter in a photographic lineup.  (*See id.* at 22.)

**II.  State Proceedings:**

A trial was held in the Superior Court of California, County of San Diego in September 1992.  At trial, Petitioner denied telling Officer Addington that after the incident at Sundance Market, he stayed at Ms. Moore's home all afternoon.  (*Id.* at 154, 162-63.)  Instead, Petitioner testified that after the incident at Sundance Market, he and Ms. Moore went to her home, and

then together went to a fast food place to eat, followed by grocery shopping. (*See id.* at 154, 160.) Petitioner denied all involvement in the shooting. (*See id.* at 160.)

Petitioner also testified that on April 1, 1992, he wore his hair short, in a "Corvalis" style, and that he had never worn a two-inch natural hairstyle. (Resp't's Lodgm't No. 11 at 164-65.) Ms. Moore also testified that in the four years she had known Petitioner, he has never worn a two-inch natural. (*See* Resp't's Lodgm't No. 12 at 210.) Sidney Cooper testified that he had been Petitioner's barber for six to eight years, and he usually cut Petitioner's hair about every two weeks. (*See* Resp't's Lodgm't No. 11 at 180.) Mr. Cooper testified that in the time he has known Petitioner, he has never worn his hair in a two-inch natural style. (*Id.*)

On September 29, 1992, after the jury had begun deliberations, the jury submitted a note to the court requesting readback of the testimony of Mr. Blackmon. (*See* Resp't's Lodgm't No. 10 at 119.) On September 30, 1992, the Court and counsel conferred off the record regarding the reading of testimony of Mr. Blackmon. (*See id.* at 120.) After conferring for about ten minutes, the reporter entered the jury room and read the requested testimony to the jury. (*See id.*) Later that day, the Court received another note from the jury. (*See id.*) Counsel and the Court conferred off the record regarding how to answer the jury note. (*See id.*) However, before the Court could respond to the jury note, the Court was notified that the jury had reached a verdict and, thus, a response to the note was unnecessary. (*See id.*)

The jury convicted Petitioner of the following crimes: (1) attempted premeditated murder, (2) assault with a firearm, (3) discharging a firearm at an occupied vehicle, and (4) discharging a firearm in a grossly negligent manner. (*See* Resp't's Lodgm't No. 10 at 22-26, 101.) The trial court sentenced Petitioner to life with the possibility of parole for his conviction of attempted premeditated murder. (*See id.*) The court also sentenced Petitioner to a consecutive term of seven years on count one for using a firearm and inflicting great bodily injury, and a consecutive term of ten years for the two prior serious felonies. (*See id.*) The court stayed the imposition of sentence on counts two through four, and struck a prior prison term enhancement. (*See id.*)

On February 23, 1994, the California Court of Appeal, Fourth Appellate District,

Division One, affirmed the judgment.  (*See* Resp't's Lodgm't No. 1 at 14.)  On May 16, 1994, the California Supreme Court declined to review Petitioner's case.  (*See* Resp't's Lodgm't No. 3 at 1.)

On November 30, 1994, Stephen M. Cohan, counsel for Petitioner at trial, responded to a letter from Petitioner asking why Mr. Cohan had chosen to not call two witnesses, Hana Johnson and Matthew Harding, to testify at trial.  (*See* Resp't's Lodgm't No. 4 Ex. B at 20-21.)  In the letter, Mr. Cohan told Petitioner he had chosen not to call Ms. Johnson to testify at trial because after investigating her, he concluded her "statement as reported by police did not raise significant issues[,]" and she "appeared to have nothing to add on the critical issue of identity."  (Id. at 20.)  Mr. Cohan also explained that after investigating Mr. Harding, he determined that Mr. Harding would not have been a helpful or credible witness in light of his extensive criminal history and the inconsistencies between his story and that of Ms. Moore's.  (See id. at 20.)

On March 27, 1996, Petitioner filed a petition for writ of habeas corpus with the California Court of Appeal.  (See Resp't's Lodgm't No. 4 at 1.)  The habeas petition was denied on May, 15, 1996.  (See Resp't's Lodgm't No. 5 at 1.)  On April 8, 1997, the California Court of Appeal denied Petitioner's second petition for writ of habeas corpus.  (See Resp't's Lodgm't No. 7 at 1.)  On May 15, 1997, Petitioner filed a habeas petition with the California Supreme Court, which was denied on August 27, 1997.  (See Resp't's Lodgm't No. 8, 9.)

**III.  Federal Proceedings**

On June 17, 1998, Petitioner filed the instant Petition alleging the following claims: (1) ineffective assistance of counsel at trial because Petitioner's attorney failed to call five witnesses to testify, (2) violation of his due process rights because the trial court erred in refusing to instruct the jury to draw favorable inferences to Petitioner based on exculpatory evidence that the prosecution destroyed, and (3) ineffective assistance of counsel at trial because Petitioner's attorney failed to object when the judge reread a witness's testimony to the jury off the record and engaged in an informal discussion with the trial court, both of which

occurred in Petitioner's absence.  (*See* Pet'r's Pet. at 5-7.)

On September 4, 1998, Respondent filed a Motion to Dismiss, claiming the Petition was untimely. [Doc. No. 6.]  On April 19, 1999, the Court granted Respondent's Motion to Dismiss. [Doc. No. 16.]  The Court of Appeal for the Ninth Circuit reversed and remanded the matter for further proceedings, finding the district court had improperly determined Petitioner was barred by the one-year statute of limitations. [Doc. No. 25.]

On remand, Respondent filed another Motion to Dismiss, which the Court granted on September 17, 2002.  [Doc. Nos. 29, 39.]  Again, the Ninth Circuit reversed, finding that the Petition was timely. [Doc. No. 47.]

On February 28, 2005, Respondent filed a Motion to Dismiss arguing that Petitioner had not exhausted his state court remedies. [Doc. No. 58.]  On August 3, 2005, this Court denied Respondent's third motion to dismiss, holding that Petitioner had exhausted state judicial remedies for all three claims. [Doc. No. 64.]

On February 23, 2006, Respondent filed a Response to the Petitioner.  [Doc. No. 68.]  On March 24, 2006, Petitioner filed a Traverse. [Doc. No. 74.]  The Magistrate Judge issued a R&R recommending that this Court deny Petitioner's Petition in its entirety.  [Doc. No. 75.]  Petitioner filed Objections to the R&R.  [Doc. No. 79.]  Respondent has not filed a Reply.

### *Legal Standard*

### I.    State Prisoner Habeas Corpus Standard

A federal court's duty in examining a state prisoner's habeas petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  The AEDPA requires that federal courts deny state prisoners' habeas petitions for claims the state courts have already adjudicated on the merits unless the adjudication of the claim (1) was contrary to clearly established federal law as provided by the United States Supreme Court or (2) was based on an unreasonable determination of clearly established federal law as provided by the U.S. Supreme Court.  *See* 28 U.S.C. § 2254(d) (West 2006).  A decision is "contrary to" the federal law if the state court arrived at a conclusion conflicting with that of the United

States Supreme Court on a question of law or if the state court applied the law differently to an analogous set of facts than the Court.  *See Lockyer v. Andrade*, 538 U.S. 63, 73 (2003).  A state court decision constitutes an "unreasonable application" of established federal law if the state court correctly identified the federal law, but unreasonably applied the legal rule to the facts of the petitioner's case.  *See id.* at 76.

## II.  Reviewing a Magistrate Judge's R&R

The duties of the district court in connection with a magistrate judge's R&R are set forth in Rule 72(b) of the Federal Rules of Civil Procedure and 28 U.S.C. § 636(b)(1).  *See* Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1) (2005).  The district court must "make a de novo determination of those portions of the report . . . to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1) (2005); *see also United States v. Raddatz*, 447 U.S. 667, 676 (1980).  "When no objections are filed, the district court may assume the correctness of the magistrate judge's findings of fact and decide the motion on the applicable law."  *Johnson v. Nelson*, 142 F. Supp. 2d 1215, 1217 (S.D. Cal. 2001).  "Under such circumstances, the Ninth Circuit has held that 'a failure to file objections only relieves the trial court of its burden to give *de novo* review to factual findings; conclusions of law must still be reviewed *de novo*.' " *Id.* (quoting *Barilla v. Ervin*, 886 F.2d 1514, 1518 (9th Cir. 1989)).  Thus, the Court conducts a *de novo* review of any findings of fact objected to by Petitioner and a *de novo* review of conclusions of law.

### *Discussion*

Petitioner asserts three claims in support of his argument that his rights under the Sixth and Fourteenth Amendments were violated:  (1) he received ineffective assistance of counsel at trial because Petitioner's attorney withheld the existence of two witnesses ("first claim"), (2) his due process rights were violated because the trial court erred in refusing to instruct the jury to draw favorable inferences to Petitioner based on exculpatory evidence that the

prosecution had failed to preserve ("second claim"), and (3) he received ineffective assistance of counsel at trial because Petitioner's attorney failed to object when the judge reread a witness's testimony to the jury and engaged in an informal discussion with the trial court, both of which allegedly occurred in Petitioner's absence ("third claim"). (*See* Pet'r's Pet. at 5-7.) In opposition, Respondent argues that (1) this Court held Petitioner's first claim was procedurally barred (*see* Order Denying Resp't's Mot. to Dismiss at 2), and even if it were not barred, it should be denied because Petitioner's attorney made a tactical decision not to call the witnesses, (2) Petitioner's second claim should be denied because the videotape was not exculpatory, and therefore the trial court did not err in refusing to provide the jury with instruction favorable to Petitioner, and (3) Petitioner's third claim should be denied because Petitioner has not proven he was not present in the courtroom when the Court allegedly reread a witness's testimony. (*See* Resp't's Answer at 8-9.)  For the following reasons, the Court **ADOPTS** the R&R and **DENIES** the Petition in its entirety.

## I.   Statute of Limitations

"Section 2244(d) [of the AEDPA] provides a one-year statute of limitations for petitions filed by state prisoners seeking collateral habeas relief in federal courts." *Espinoza-Matthews v. California*, 432 F.3d 1021, 1025 (9th Cir. 2005).  Although a petitioner has one year from the date the state proceedings become final to file a federal petition for writ of habeas corpus under the AEDPA, the time is tolled while a petitioner is exhausting state remedies.  *See Nino v. Galaza*, 183 F.3d 1003, 1004 (9th Cir. 1999); 28 U.S.C.A. § 2254(d) (West 1996); *see also Smith v. Duncan*, 297 F.3d 809, 814 (9th Cir. 2002) ("a state habeas petition which is denied tolls AEDPA's limitation period until the denial is final").  "Pursuant to Rule 24 of the California Rules of Court, 'a denial of a habeas petition within the California Supreme Court's original jurisdiction is not final for 30 days.' "  *Smith v. Duncan*, 297 F.3d 809, 814 (9th Cir. 2001) (quoting *Bunney v. Mitchell*, 262 F.3d 973, 974 (9th Cir. 2001).

Here, Petitioner's conviction became final on May 16, 1994, the day the California Supreme Court declined to review Petitioner's case.  (*See* Resp't's Lodgm't No. 3 at 1.)

However, the one-year statute of limitations was tolled while Petitioner sought habeas relief in state court. (*See* Resp't's Lodgm't Nos. 4-9.) The one-year statute of limitations did not begin to run until September 26, 1997, thirty days from the day the California Supreme Court denied Petitioner's final writ of habeas corpus on August 27, 1997. (*See* Resp't's Lodgm't No. 9 at 1.) Thus, Petitioner had until September 26, 1998, to file a timely petition for writ of habeas corpus in federal court. Because Petitioner filed the instant Petition in this Court on June 17, 1998, the Court **FINDS** the Petition is timely. [Doc. No. 1]

**II.     Exhaustion of State Remedies**

"Because federal habeas is an extraordinary remedy that requires a federal court's intrusion upon a sovereign state's exercise of its own police power, the Supreme Court long ago laid down the rule that a petitioner must first exhaust every available avenue of relief at the state level before raising his claims [in federal court]." *McQueary v. Blodgett*, 924 F.2d 829, 833 (9th Cir. 1991); *see also Rose v. Lundy*, 455 U.S. 509, 522 (1982). This exhaustion of state remedies requirement was codified by 28 U.S.C. § 2254(b)(1), which provides that:

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that--
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1). Thus, the exhaustion requirement is satisfied when a petitioner provides the state court with a "fair opportunity to apply controlling legal principles to the facts bearing upon his [or her] constitutional claim." *Anderson v. Harless*, 459 U.S. 4, 6 (1982).

However, notwithstanding a failure to present a claim to the state supreme court, the exhaustion requirement also may be satisfied " 'if it is clear that [the habeas petitioner's]

claims are now procedurally barred under [state] law' " *Gray v. Netherland*, 518 U.S. 152, 161 (1995) (quoting *Castille v. Peoples*, 489 U.S. 346, 351 (1989); *see also Engle v. Isaac*, 456 U.S. 107, 125-26 n.28 (1982) (noting that the exhaustion requirement applies "only to remedies still available at the time of the federal petition."); *Valerio v. Crawford*, 306 F.3d 742, 770 (9th Cir. 2002) ("the district court correctly concluded that Phillip's claims were nonetheless exhausted because 'a return to state court would be futile.' "). " 'A habeas petitioner who has defaulted his federal claims in state court meets the *technical* requirements for exhaustion; there are no state remedies any longer "available" to him.' " *Cassett v. Stewart*, 406 F.3d 614, 621 n.5 (9th Cir. 2005) (quoting *Coleman v. Thompson*, 501 U.S. 722, 732 (1991)).

Here, in its prior Order denying Respondent's Motion to Dismiss, this Court already determined that all three of Petitioner's claims have been exhausted in state court. (*See* Order Denying Resp't's Mot. to Dismiss at 2.) The Court agreed with the Magistrate Judge's finding that Petitioner's claim is exhausted because it is procedurally barred in state court. (*See id.* at 2.) As the Magistrate Judge concluded, "[b]ecause Petitioner voluntarily omitted this claim from his habeas petition to the California Supreme Court after it was denied by the appellate court, any future attempt to raise it to the California Supreme Court would be barred as successive." (R&R Denying Rep't's Mot. to Dismiss at 7) (citing *In re Clark,* 5 Cal. 4th at 797) (In California, "absent justification for the failure to present all known claims in a single, timely petition for a writ of habeas corpus, successive or untimely petitions will be summarily denied.") Respondent concedes that Petitioner's second claim is exhausted. (*See* Order Denying Resp't's Mot. to Dismiss at 2; *see also* Resp't's Supp. Mem. Mot. to Dismiss at 6.) Petitioner's third claim is exhausted because the California Supreme Court denied this claim in Petitioner's final state court habeas corpus petition. (*See* Resp't's Lodgm't No. 8 at 3-5, 9 at 1.) Thus, this Court **FINDS** that Petitioner has exhausted all state remedies for claims asserted in the instant Petition.

1    **III.    Ineffective Assistance of Counsel Claims**

2          In his first and third claims, Petitioner asserts he was denied his right to effective

3    assistance of counsel under the Sixth and Fourteenth Amendments. (*See* Pet'r's Pet. at 5, 7.)

4    Specifically, in his first claim, he argues his trial counsel was ineffective because his counsel

5    did not tell Petitioner about five potential witnesses. (*See id.* at 6.)  In his third claim,

6    Petitioner contends that his attorney was ineffective for failing to object when the judge reread

7    a witness's testimony to the jury off the record, engaging in an informal discussion with the

8    trial court, and not waiting for Petitioner to be present before taking part in these two

9    proceedings. (*See id.* at 7.)  Respondent argues Plaintiff's first claim is procedurally barred,

10   or in the alternative, the claim should be denied because Petitioner's counsel made a tactical

11   decision not to call the witnesses. (*See* Resp't's Answer at 8-9.)  Respondent also asserts that

12   Petitioner's third claim should be denied because Petitioner has not proven he was not present

13   in the courtroom when the Court allegedly reread a witness's testimony. (*See id.*)  For the

14   reasons set forth below the Court **DENIES** Petitioner's first and third claims.

15        **A.    *Legal Standard***

16          Claims of ineffective assistance of counsel are governed by *Strickland v. Washington*,

17   466 U.S. 668 (1984).  Under *Strickland*, to prove a claim of ineffective assistance of counsel,

18   Petitioner must meet a two-part test.   First, Petitioner must show that his counsel's

19   performance fell below an objective standard of reasonableness. *See id.* at 687.   A court's

20   review of counsel's performance should be "highly deferential" because there is a "strong

21   presumption" that counsel rendered adequate assistance and exercised reasonable professional

22   judgment. *United States v. Ferreira-Alameda*, 815 F.2d 1251, 1253 (9th Cir. 1987); *see also*

23   *Strickland*, 466 U.S. at 690.  Second, Petitioner also must show that his counsel's deficient

24   performance prejudiced the defense. *See Strickland*, 466 U.S. at 687.  "The defendant must

25   show that there is a reasonable probability that, but for counsel's unprofessional errors, the

26   result of the proceeding would have been different.  A reasonable probability is a probability

27   sufficient to undermine confidence in the outcome." *Id.* at 693-94.  The court need not address

28   both the performance prong and the prejudice prong if the petitioner fails to make a sufficient

1   showing of either one.  *See id.* at 700.

2   **B.    *Application***

3   **1.    Petitioner's First Claim Regarding Counsel's Failure to Call**

4   **Witnesses to Testify**

5   In Petitioner's first claim, he argues his trial counsel withheld the existence of five

6   witnesses and failed to call them to testify at trial.   Petitioner identifies five witnesses that

7   counsel allegedly should have called:  Ronald Lee Williams, Arthur William Felton, Mary E.

8   Gause, Loyd Roberts, and Hanna L. Johnson.  (*See* Pet'r's Pet. at 5.)  However, Petitioner only

9   addresses why counsel's failure to call Ms. Johnson was unreasonable, and neglects to set forth

10  any facts regarding the four other witnesses.[1]  Thus, below, this Court only discusses counsel's

11  alleged failure to call Ms. Johnson.

12  The Court of Appeal for the Ninth Circuit has held that an attorney need not interview

13  all possible witnesses to have performed within a reasonable range of professional conduct.

14  *See LaGrand v. Stewart*, 133 F.3d 1253, 1274 (9th Cir. 1998).   Furthermore, a lawyer's

15  decision not to call a witness after interviewing him or her is given more deference than a

16  decision not to interview the witness at all.  *See Riley v. Payne*, 352 F.3d 1313, 318 (9th Cir.

17  2003).  "The reason for this is simple: A lawyer who interviews the witness can rely on his

18  assessment of their articulateness and demeanor-factors . . . [which the court is] not in a

19  position to second-guess."  *Id.* (quoting *Lord v. Wood*, 184 F.3d 1083, 1095 n.8 (9th Cir.

20  1999)).

21  Here, Petitioner concedes that counsel interviewed Ms. Johnson, but maintains that

22  counsel's error was unreasonable and prejudicial because Ms. Johnson's testimony would have

23  impeached Mr. Blackmon's testimony regarding the number of people in the car at the time

24  of the shooting.  (*See* Pet'r's Pet. at 5-6.)  According to Petitioner, Ms. Johnson told police that

25  there was only one suspect (*see* Pet'r's Pet. at 5); in contrast, Mr. Blackmon testified that there

---

27  [1] The Court **ADOPTS** the Magistrate Judge's recommendation that this Court deny

28  Petitioner's claims of ineffective assistance of counsel as to the four witnesses whom
    Petitioner does not discuss.  As the Magistrate Judge concludes, Petitioner has not
    provided any facts for why his attorney acted unreasonably in not calling these witnesses.
    (*See* R&R at 13.)

were three people sitting in the backseat and one person in the passenger seat at the time of the

shooting (*see* (Resp't's Lodgm't No. 11 at 25-26). Thus, Petitioner argues that Ms. Johnson's

testimony would have contradicted Mr. Blackmon's testimony regarding the number of people

in the vehicle. (*See* Pet'r's Pet. at 5.)

However, as the California Court of Appeals correctly held, Petitioner's argument fails

because counsel acted reasonably in making a tactical decision that Ms. Johnson's testimony

would have contributed nothing to Petitioner's defense. (*See* Resp't's Lodgm't No. 5 at 2.)

As counsel explained in his letter to Petitioner, Ms. Johnson would not have been helpful to

the critical issue of identity at trial. (*See id.*) Ms. Johnson told police the car was occupied "by

a black male, 5'7" tall." (Resp't's Lodgm't No. 4 Ex. A at 17.) Thus, her testimony would

have been similar to the Governent's witness, Mr. Blackmon, who described the shooter as a

light-skinned African American male, 5'5" tall. (*See* Resp't's Lodgm't No. 11 at 32.)

Furthermore, Petitioner has not shown prejudice because it is unlikely that Ms. Johnson's

testimony would have been helpful to at trial with regards to identity. The police report stated,

that "[Ms.] Johnson can't identify either of the parties." (Resp't's Lodgm't No. 4 Ex. A at 17.)

Moreover, deference should be given to counsel's decision that Ms. Johnson's testimony

corroborating with Mr. Blackmon's testimony about the identity of the shooter outweighed any

value to the defense of establishing inconsistencies about the  number of people in the car. For

the reasons stated above, the Court **DENIES** Petitioner's first claim of ineffective assistance

of counsel.

### 2.    Petitioner's Third Claim Regarding Counsel's Ineffective Assistance During Court Proceedings

In Petitioner's third claim he argues his counsel was ineffective at trial for three reasons.

First, counsel failed to object when the judge reread a prosecution witness's testimony to the

jury off the record. (*See* Pet'r's Pet. at 7.) Second, counsel engaged in an informal discussion

with the court regarding a proposed response to a jury question. (*See id.*) Third, during both

instances of alleged unreasonable conduct, counsel did not have Petitioner present in the

courtroom; and this was prejudicial because Petitioner would have objected if he had been

1   present.  (*See id.*)  In opposing Petitioner's claim, Respondent asserts that the California

2   Supreme Court properly found that Petitioner failed to show he was not present in the court

3   room.  (*See* Resp't's Answer at 8-9.)

4                          a.      *Counsel's Failure to Object to Rereading of Victim's Testimony*

5          The Court first examines whether the California Court of Appeal unreasonably applied

6   federal law when it denied Petitioner's claim that his attorney was ineffective for failing to

7   object to the jury being reread the victim's testimony.[2]  Here, the California Court of Appeal

8   found:

9          Brown fails to state why the introduction of the evidence was improper and

10         the grounds for objection.  Moreover, he fails to establish how the

11         introduction of the transcript testimony prejudiced him.  The petition is

12         denied.

13   (Resp't's Lodgm't No. 5 at 2.)  Thus, the California Court of Appeal denied Petitioner's claim

14   under both the performance and prejudice prongs of *Strickland*.

15         This Court agrees with the California Court of Appeal's conclusion that counsel's

16   decision not to object to the introduction of evidence was proper.[3]  Generally, rereading

17

18   [2] Under certain circumstances, federal courts may presume that the denial of a habeas
19   corpus petition by a higher state court rests on the same grounds as the last reasoned state
     court decision. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).  In *Ylst*, the Supreme
20   Court held, "[w]here there has been one reasoned state judgment rejecting a federal claim,
     later unexplained orders upholding that judgment or rejecting the same claim rest upon
21   the same ground." *Id.*  Here, the California Supreme Court denied Petitioner's third
     claim in its order dated August 27, 1997, which read in its entirety, "Petition for writ of
22   habeas corpus is DENIED." (Resp't's Lodgm't No. 9 at 1.)  Thus, it can be presumed
     that the California Supreme Court rests on the same ground as the last reasoned state
23   court decision, which was on May 15, 1996, when the California Court of Appeal denied
     Petitioner's habeas corpus petition by issuing a written opinion and rationale for its
24   decision.

25   [3] Petitioner does not assert that rereading of testimony was improper based on the trial
     court's failure to admonish the jury.  In *United States v. Hernandez*, 27 F.3d 1403, 1408-
26   09 (9th Cir. 1994), the Ninth Circuit held that before a jury is permitted to reread or
     rehear testimony, certain precautions must be taken to avoid undue emphasis of particular
27   testimony. *See also United States v. Lujan*, 936 F.2d 406, 411-12 (1991).  However,
     because Petitioner does not allege that the rereading of testimony was improper based on
28   any failure by the trial cout to admonish the jury, the Court does not address this issue
     here.  Notwithstanding counsel's alleged failure to object, because the rereading of Mr.
     Blackmon's testimony was not reported, the Court cannot determine based on a minute

testimony to the jury is not improper so long as the Defendant had an opportunity to cross-examine the witness. *See Crawford v. Washington*, 541 U.S. 36, 54 (2004). Here, counsel's failure to object was not unreasonable because counsel had already cross-examined Mr. Blackmon on the stand. (*See* Resp't's Lodgm't No. 11 at 29-56.) Thus, the Court **FINDS** that the California Court of Appeals' denial of Petitioner's petition did not constitute an unreasonable application of the *Strickland* standard.

> b. *Counsel Engaging in an Informal Discussion with the Trial Court*

Petitioner further claims that his right to effective assistance of counsel was denied when trial counsel engaged in an informal, off the record conversation with the court regarding a proposed response to a jury note. (*See* Pet'r's Pet. at 7.) Respondent asserts that the California Supreme Court properly rejected this claim because Petitioner failed to show prejudice. (*See* Resp't's Answer at 9.)

As discussed above, claims of ineffective assistance of counsel are governed by the *Strickland* standard, which requires a showing of both (1) unreasonable failure by the attorney, and (2) prejudice to the defendant. *See Strickland*, 466 U.S. at 687. Furthermore, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . [i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.* at 668.

Here, as the R&R correctly concludes, Petitioner was not prejudiced by counsel's informal discussion with the judge regarding a note from the jury because the court did not even respond to the jury note. (*See* R&R at 15.) The minute order indicates that on September 30, 1992, at 3:05 p.m., "[t]he court and counsel confer[red] informally in the courtroom regarding the jury note." (Resp't's Lodgm't No. 10 at 120.) The minute order also shows that at 3:31 p.m., the Court reconvened "with counsel and defendant present as noted above. The Court and counsel discuss[ed a] proposed response to the jury note." (*Id.*) At 3:40 p.m., the court was notified "that the jury ha[d] reached verdicts and [a] response to the note [was] not

---

order alone, whether the trial court did or did not admonish the jury.

necessary." (*Id.*)  Therefore, Petitioner cannot show that he was in any way prejudiced by counsel's informal discussion with the court because the jury rendered a verdict without having received a response from the court.  Thus, the Court **FINDS** the California Court of Appeal's denial of Petitioner's habeas claim was not an unreasonable application of clearly established federal law.

c.    *Petitioner's Absence During Reread of Testimony and Counsel's Informal Discussion with Trial Court*

Petitioner maintains that had he been present during the reread of the victim's testimony and the judge's informal discussion with counsel about a jury note, he would have objected. (*See* Pet'r's Pet. at 7.)  In response, Respondent argues that Petitioner has failed to show that he was not present during these proceedings.  (*See* Resp't's Answer at 9.)

A defendant has a right to be present at any critical stage of his criminal proceedings if his or her presence would contribute to the fairness of the procedure.  *See Kentucky v. Stincer*, 482 U.S. 730, 744 (1987); *see also United States v. Gagnon*, 470 U.S. 522, 527 (1985) (although defendant was absent when the judge spoke with a juror concerning one respondent who was sketching jurors, it did not violate his right to Due Process because his presence was not needed to "ensure fundamental fairness," and defendant suffered no prejudice.)  However, even if it were error to deny a defendant the right to be present during a particular stage of a trial, the court must examine whether the error was harmless.  *See Arizona v. Fulminante*, 499 U.S. 279, 306 (1991) (holding that the right to be present during all critical stages of the proceedings is subject to harmless error analysis unless the deprivation, by its very nature, cannot be harmless); *see also Campbell v. Rice*, 408 F.3d 1166, 1171 (9th Cir. 2005) (holding denial of the right to be present during an ex parte discussion between judge and jury member was subject to the harmless error analysis).

Here, Petitioner's argument that "the trial transcript would clearly show that petitioner [was] not present in court when the readback of Mr. Blackmon testimony [was] requested and given to the jury" is not supported.  (Pet'r's Traverse at 17.)  As the R&R found, the minute order does not reflect whether or not Petitioner was present when the court reread the victim's

testimony or discussed a jury note with the judge.  (*See* R&R at 15.)  Furthermore, even if Petitioner can show that he was absent during these proceedings, Petitioner has set forth no facts showing that his presence would have contributed to the fairness of the procedure.  As the Court discussed above, Petitioner's objections would not have been granted because readback of testimony was proper, and the jury note had no impact on the verdict.  Thus, the Court **FINDS** that any error, if any, was harmless.

## IV.    Due Process Claims

Petitioner argues that he was denied his Fourteenth Amendment right to due process because (1) the prosecution failed to preserve exculpatory videotape evidence, and (2) the trial court erred by refusing to instruct the jury to draw inferences in Petitioner's favor in light of prosecution's error in not preserving the videotape as evidence.  (*See* Pet'r's Pet. at 7.) Petitioner's claim that the videotape was exculpatory is based on his belief that the videotape would have depicted Petitioner's hairstyle on the day of the shooting.  In particular, Petitioner argues that the videotape would have impeached Mr. Blackmon's identification of Petitioner as the shooter because the tape would have shown that Petitioner wore a very short hairstyle and not the two-inch natural hairstyle that Mr. Blackmon had described was worn by the shooter.  (*See id.*)  Respondent argues that the California Court of Appeal correctly concluded that the videotape was not exculpatory.  (*See* Resp't's Answer at 9.)

In *California v. Trombetta*, 467 U.S. 479, 488 (1984), the Court held that the state has a constitutional duty to preserve evidence that "might be expected to play a significant role in the suspect's defense."   The Court established a two-part test for determining the "constitutional materiality" of evidence: (1) "the evidence must possess exculpatory value that was apparent before the evidence was destroyed," and (2) the evidence must "be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means."  *Id.* at 488-89.  (Resp't's Lodgm't No. 1 at 7.)

The California Court of Appeal denied Petitioner's habeas corpus petition on May 15, 1996, stating "on appeal we held that the state had no duty to preserve the videotape in

1    question." (Resp't's Lodgm't No. 5 at 1.)  On appeal, the Court of Appeal previously held:

2          Steven Acho, the owner of Sundance Market, testified that a videotape

3          camera recorded Brown and Blackmon while they were inside the market.

4          Acho testified that Detective Addington told him to keep the videotape for

5          her review, and the two subsequently reviewed the tape together.  Acho

6          said since there was "no action" on the tape, he recorded over it.

7          According to Acho, Addington never told him what to do with the tape.

8          Acho testified that because of sunlight coming through the front door of the

9          market, the images on the videotape were not very clear.

10   (Resp't's Lodgm't No. 1 at 6.)[4]  The Court of Appeal rejected Petitioner's argument that the

11   tape was exculpatory for identification purposes under *Trombetta*.  (*See id.* at 6-7.)

12         The state appellate court's decision that the videotape did not meet the two-part

13   "constitutional materiality" test is consistent with clearly established federal law under

14   *Trombetta*.  Applying the first prong of *Trombetta*, the Court of Appeal found that the

15   videotape was not exculpatory because the defense did not ask Mr. Acho or Mr. Addington

16   about Petitioner's hairstyle, so there is no basis of complaining about the destruction of the

17   videotape.  (*See id.* at 8.)  Furthermore, even if the videotape was exculpatory, the Court of

18   Appeal held that the exculpatory nature was not apparent to the state at the time.  (*See id.*)

19   This Court agrees because Mr. Acho testified that due to the sunlight coming through the front

20   door of Sundance Market, the images on the videotape were not very clear.  Thus, it is

21   questionable whether the videotape contained any exculpatory evidence that would have been

22   apparent to the state at the time.

23         Applying the second prong of *Trombetta*, the Court of Appeal found that Petitioner had

24

_____

25         [4] Mr. Acho was not available to testify at Petitioner's retrial, but counsel stipulated to the
       reading of the transcript into the record.  (*See* Resp't's Lodgm't No. 11 at 103.)
26     However, because Mr. Acho's testimony was read, not transcribed into the record, the
       Court cannot independently confirm this testimony.  Instead, the Court accepts the
27     findings of fact made by the court of appeal absent clear and convincing evidence to the
       contrary pursuant to 28 U.S.C. § 2254(e)(1); *see also Summer v. Mata*, 449 U.S. 539,
28     545-47 (1981) (deference is owed to factual findings of both state trial and appellate
       courts).

alternative ways for attacking the victim's statements and presenting identity evidence, including testimony from Petitioner's barber and wife. (*See id.* at 8-9.) This Court agrees with the Court of Appeal's application of the second *Trombetta* prong because Petitioner presented evidence of his hairstyle on the day of the shooting. Petitioner's barber testified as to how Petitioner styled and cut his hair; thus, Petitioner was not without comparable evidence of his hairstyle. (*See* Resp't's Lodgm't No. 11 at 180.) Because the Court has determined that the videotape was not exculpatory, the Court need not address whether denial of the favorable instruction was in error. For the reasons set forth above, the Court **FINDS** the Court of Appeal's denial of Petitioner's Fourteenth Amendment claim is consistent with clearly established federal law.

### *Conclusion*

For the reasons set forth above, this Court **ADOPTS** the R&R and **DENIES** the Petition in its entirety.

**IT IS SO ORDERED.**

DATED: October 10, 2006

_____
HON. NAPOLEON A. JONES, JR.
United States District Judge

cc: All Parties

  Magistrate Judge William McCurine, Jr.